STATE OF IOWA, appellee, v. STEPHEN K. WHARFF, appellant.

No. 51587.

(Reported in 134 N.W.2d 922)

872

MAY 4, 1965.

Thomas L. Koehler, of Cedar Rapids, for appellant.

Lawrence F. Scalise, Attorney General, and Don R. Bennett, Assistant Attorney General, both for appellee.

SNELL, J.—The defendant, Stephen K. Wharff, was charged, tried, found guilty and sentenced to the reformatory for the offense of escape as defined and provided in section 745.1, Code of Iowa. Alleging errors in the trial he has appealed.

On July 24, 1963, defendant was received at the men's reformatory to begin serving a previously imposed sentence of one year. On November 15, 1963, he was a member of a work detail of eleven men assigned to the dairy farm located just north of the institution proper. He completed his work "very well" at about 6:50 p.m., hung up his shovel, turned out the lights in the dairy barn and walked out. While the man in charge was otherwise engaged for a few minutes the defendant disappeared.

At about 6 p.m. November 17, two days later, the defendant appeared at the home of his parents in Des Moines. He was returned to the reformatory by his father. Defendant's mother called the warden by phone stating that defendant was being returned by his father.

The members of the work detail at the dairy farm were under the supervision of an assistant dairyman, but were not under constant observation every moment. Defendant had worked at the dairy farm several times and was known to the assistant dairyman in charge. The assistant dairyman testified that at 10 minutes before 7 p.m. on November 15 defendant "acted like he always did" and the witness was unable to observe any changes from other days.

Defendant admitted that he left the dairy farm and the

874

custody of the institution and that for two days he was absent without leave. His defense was based on his claim of lack of intent. His counsel asked and defendant answered as follows:

"Q. At that time, when you left the farm, did you willfully intend to escape to avoid further imprisonment? A. I don't believe so—I don't really remember leaving, to tell the truth, but I don't believe I intended to."

He then testified that at about 4 p.m. he took five pills, three that he called "Red Devils" and two that he called "Yellow Jackets." He said he then brought down from the hayloft in the calf barn a pint of whiskey and drank between half and three-quarters of the contents. He denied memory of anything thereafter until the next morning when, in the company of another inmate, he woke up in a barn five or six miles from Anamosa. Defendant slept most of that day and then walked and hitchhiked to Des Moines. After wandering around Des Moines all day Sunday he went to his parents' home. After some discussion there defendant was returned to the reformatory.

I. Defendant urges error in three particulars as grounds for reversal. For such value to the bench and bar as there may be in answers thereto these questions will be considered, infra, but each is secondary to the main issue, i.e., the question of intent.

II. Section 745.1, Code of Iowa, provides:

"Prison breach—escape—punishment. If any person committed to the * * * men's * * * reformatory shall break such prison and escape therefrom or shall escape from or leave without due authority any building, camp, farm, garden, city, town, road, street, or any place whatsoever in which he is placed or to which he is directed to go or in which he is allowed to be by the warden or any officer or employee of the prison whether inside or outside of the prison walls, he shall be deemed guilty of an escape from said * * * reformatory and shall be punished by imprisonment in said * * * reformatory for a term not to exceed five years, to commence from and after the expiration of the term of his previous sentence."

Defendant admitted that he had been committed to the men's reformatory and that he left the farm operated in connec-

tion therewith without authority. He does not claim that he was kidnapped or forced to leave or prompted by anything beyond his own volition. He simply says he took some pills, drank some whiskey and because of lack of memory does not believe he intended to escape.

■ Defendant admitted the acts prohibited by the statute. The statute does not make proof of intent an essential element for conviction. Nowhere in the statute is there any suggestion that guilty knowledge or criminal intent must be shown or that lack of proof thereof is fatal to the prosecution. We hold that under section 745.1, Code of Iowa, intent is not an essential element of the offense.

■■ III. It is well established "that the legislature may forbid the doing of an act and make its commission a crime without regard to the intent or knowledge of the doer. Whether a criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined as a matter of construction from the language of the act, in connection with its manifest purpose and design." State v. Dunn, 202 Iowa 1188, 1189, 211 N.W. 850.

See also State v. Striggles, 202 Iowa 1318, 210 N.W. 137, 49 A. L. R. 1270; State v. Dobry, 217 Iowa 858, 250 N.W. 702. The Dobry case involved a false financial statement and the dissent argues from a premise not available to defendant here.

State v. Schultz, 242 Iowa 1328, 50 N.W.2d 9, considers the question in both the majority and dissenting opinions. The charge was that the defendant by agent or employee made beer available to a minor. The Dunn, Striggles and Dobry cases were cited with approval but held not applicable where the intent of the legislature to make an owner or employer liable for the acts of an agent was not clearly expressed. The case holds that the beer statute involved failed to meet the test of holding the defendant employer criminally liable for an offense committed by an agent or employee without sanction or forewarning while defendant was absent from the premises.

■ IV. Defendant claims he was intoxicated. If he was intoxicated it was the result of his own voluntary act. Where proof of specific intent is not required defendant may not escape

responsibility for doing that which his own voluntary act invoked. In 22 C. J. S., Criminal Law, section 66, it is said:

"It is a well settled general rule of the common law, and also generally followed under the statute, that voluntary drunkenness of accused at the time a crime was committed is no defense, especially where no particular motive, purpose, or intent is a necessary element of the crime charged, as where the crime charged consists only of the doing of acts which are prohibited. * * *

"If a person voluntarily drinks and becomes intoxicated, and while in that condition commits an act which would be a crime if he were sober, he is fully responsible, whatever may be the degree of his intoxication or the condition of his mind * * *.

"It can make no difference, where no specific intent is necessary, that the intoxication was so extreme that accused was unconscious of what he was doing and had no capacity to distinguish between right and wrong, and, although there may be no actual criminal intent, the law will, by construction, supply it, especially where the offense involves only a general criminal intent which may be presumed from the doing of the prohibited acts."

▮ The rule in Iowa is well settled. Drunkenness is no excuse for crime and evidence thereof is not admissible for the purpose of excusing the offense but is admissible for the purpose of showing that there could be no criminal intent. State v. Maxwell, 42 Iowa 208, 212, 213; State v. Johnson, 215 Iowa 483, 488, 245 N.W. 728; State v. Wilson, 234 Iowa 60, 76, 11 N.W.2d 737; 22A C. J. S., Criminal Law, section 621.

▮ V. Even where intent is an essential element intoxication is an affirmative defense with the burden resting on defendant to establish it by a preponderance of the evidence. State v. Wilson, supra, loc. cit. 77.

▮ VI. A witness called by defendant testified that he observed defendant on the afternoon of November 15. He was asked "Did he appear to act normal to you?" He answered "No, I don't know." He was then asked "Did he appear to act intoxicated?" There was an objection that no proper foundation had been laid and that the question called for an opinion and conclu-

sion of the witness. The objection was sustained. The question was not vulnerable to objection on the grounds urged.

A witness who has observed a person may express an opinion whether he is intoxicated without first stating the facts on which the opinion is based and a nonexpert witness may give his opinion if he had the opportunity to observe. State v. Helgerson, 247 Iowa 651, 655, 656, 75 N.W.2d 227; Bohnsack v. Driftmier, 243 Iowa 383, 395, 52 N.W.2d 79; State v. Wheelock, 218 Iowa 178, 185, 254 N.W. 313.

The defense did not press the point nor pursue the issue. There was no profer and there is nothing in the record to show what the answer would have been. No prejudicial error appears. State v. Billberg, 229 Iowa 1208, 1218, 296 N.W. 396.

The trial court may have had in mind a valid objection to the question. If so, there was no error. In State v. Bales, 251 Iowa 677, 682, 102 N.W.2d 162, we said:

"The rule is well established in this jurisdiction that, although an insufficient objection is interposed, if the court sustains the same and there was in fact a good and sufficient objection to the reception of the evidence, there is no reversible error. In re Will of Smith, 245 Iowa 38, 46, 60 N.W.2d 866, and cases cited therein. In re Will of Crissick, 174 Iowa 397, 416, 156 N.W. 415, 422, often referred to as ably stating the rule, it was said: 'If matter is, in fact, objectionable * * * it does not matter that objection was not more specific, or that none was interposed. * * * But, where the court sustains an objection, and there are, in fact, good grounds for so doing, there will be no reversal because good reasons or full reasons were not presented below'."

We have said, supra, that intoxication is not a defense. Evidence relative thereto would neither establish nor refute any essential element. Rejection of evidence relative thereto would not be reversible error.

VII. A witness for the defense testified that he had observed defendant's actions on and before November 15. Counsel for the defendant then asked and the witness answered as follows:

"Q. When you observed him late in the afternoon November

15, did he appear to act normal? A. He acted as if he was sniffing, or drinking, to me—he didn't walk right."

The county attorney then moved to strike the answer as not responsive to the question asked. The motion was sustained on that basis. This was error but not prejudicial to any defense available to defendant.

"The objection that the answer of a witness is not responsive is not available to the party who is not interrogating." Miller v. Miller, 237 Iowa 978, 989, 23 N.W.2d 760.

The error was without prejudice. The witness was later permitted to describe defendant's actions and in any event the evidence went to a matter that was not defensive.

VIII. Defendant's father was called as a witness by the State. He testified that he saw defendant on the evening of November 17 in the kitchen of witness' home in Polk County and that he returned defendant to the institution. On cross-examination defendant's counsel attempted to show what defendant said or did to indicate his state of mind. Objections that it was improper cross-examination were sustained. There was no error. The questions were beyond the subject matter of direct examination.

Because of what we have said in previous divisions neither what defendant said nor his state of mind on the evening of November 17 was material to what he did two days previous. Without doubt defendant was remorseful and realized that he had done a very foolish thing. His original term would have expired in a few months. Had he behaved himself he would have been free in a short time. On the very poor chance of anything beyond temporary freedom he brought on himself additional imprisonment of not to exceed five years. His remorse is understandable but not defensive.

We find no reversible error.

The case is—Affirmed.

GARFIELD, C. J., and THOMPSON, LARSON, PETERSON, MOORE and STUART, JJ., concur.

THORNTON, J., concurs in result.

HAYS, J., not sitting.