Herman RONNFELDT, Plaintiff,

v.

**IOWA DISTRICT COURT FOR JONES COUNTY, Defendant.**

No. 97–1514.

Supreme Court of Iowa.

Oct. 13, 1999.

Philip B. Mears of Mears Law Office, Iowa City, for plaintiff.

Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for defendant.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and TERNUS, JJ.

LARSON, Justice.

Herman Ronnfeldt was disciplined under a department of corrections rule prohibiting escape by inmates. He filed a postconviction relief action under Iowa Code chapter 822 (1995) claiming the prison disciplinary committee improperly applied the department's escape rules. The district court denied relief, and Ronnfeldt obtained a writ of certiorari in this court. We now annul the writ.

## I. *Facts and Prior Proceedings.*

Ronnfeldt was an inmate at the Iowa State Penitentiary at Fort Madison when he became qualified for work release. He signed a work release agreement under which he would leave the penitentiary at 8:15 a.m. on October 6, 1995, on a bus, and travel to Waterloo where his sister would pick him up and drive him to his work release assignment at West Union. He was to be in West Union by 5:30 p.m.

Ronnfeldt, however, had travel plans of his own. He got off the bus in Burlington, not Waterloo, where he was picked up by a female friend, not his sister. His friend delivered him to West Union by the 5:30 p.m. deadline. In the meantime, however, the prison was notified that he had left the bus, and he was immediately placed on escape status.

A prison disciplinary committee found Ronnfeldt violated rule 9 of the department of corrections' policy, which provides:

> Major rule violations will result in the loss of good time and <u>other disciplinary sanctions that are imposed by the Hearing Committee</u> .

### STANDARDS

> A. The following are considered major <u>rule</u> violations; circumstances and special exception[s] allow staff to determine otherwise.
>
> . . . .
>
> 9. <u>Escape.</u> When an inmate is absent from the facility without proper authorization for over two (2) hours or there is probable cause to believe the inmate has taken flight or is involved in a criminal offense.

Department of Corrections, Major Rule Violations, Work Release Program.

Ronnfeldt argues if he is guilty of any rule infraction it is of rule 10, entitled "<u>Out of Place Assignment</u>":

> When an inmate is not at his/her designated place of assignment (facility, work place, treatment program, furlough). The inmate is not to leave the state of Iowa without staff permission.

*Id.* r. 10. Violations of rule 10 are subject to less severe sanctions than violations of rule 9.

## II. *The Legal Standard.*

■ The findings of a prison disciplinary committee are not subjected to rigorous review by courts; the standard is whether there is *any* evidence in the record to support the findings. *Key v. State,* 577 N.W.2d 637, 641 (Iowa 1998); *see Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356, 365 (1985).

## III. *The Issues.*

Ronnfeldt raises four issues: (1) rule 9 requires an intent to escape, and there was

no evidence of such intent here; (2) his conduct does not "fit" the language of the rule; (3) his actions did not constitute escape under its reasonably understood meaning; and (4) he was not put on notice that he was subject to the rule.

■ A. *Does rule 9 require intent?* Ronnfeldt argues rule 9 should be read to require intent to escape, even though the rule does not expressly require it. Rules 9 and 10 would otherwise be virtually identical, according to him, and one of the rules would therefore be surplusage.

Rule 9 does not expressly require intent. In fact, it does not refer to an affirmative act at all; rather, it describes the prisoner's *status,* defining escape as an *absence* from the facility without authorization or *being gone* under circumstances suggesting flight. We believe an intent requirement is not even implied under the rule.

Lending support to this holding, our earlier cases have held that an escape statute that did not expressly require intent or knowing conduct would not be interpreted to imply those elements. *See, e.g., State v. Wharff,* 257 Iowa 871, 875, 134 N.W.2d 922, 924–25 (1965) (statute prohibiting leaving "any place whatsoever in which he is placed or to which he is directed to go" constitutes escape; intent need not be shown); *accord State v. Leckenby,* 260 Iowa 973, 976, 151 N.W.2d 567, 569 (1967). We reject Ronnfeldt's argument that we should read an intent requirement into rule 9.

■ B. *Does Ronnfeldt's conduct "fit" the rule?* Ronnfeldt contends he could not be guilty of a rule 9 violation because (a) he had authorization to leave Fort Madison, (b) a bus is not a "facility," and (c) his actions did not fit the common-law definition of escape. We reject all of these arguments.

It is true Ronnfeldt had authority to leave Fort Madison, but conditions were placed on that permission, and Ronnfeldt admittedly failed to meet them. The second argument is that a bus is not a "facili-ty" under the rule. Facility has among its definitions "something ... that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end." Webster's Third New International Dictionary 812 (unabr. ed.1986). A bus fits that definition when used under these circumstances. In fact, a New York court has held that the term "detention facility," as used in a statute, includes a prison bus. *People v. Braun,* 135 A.D.2d 1114, 1115, 523 N.Y.S.2d 289, 290 (1987). It is reasonable to include a bus within the term "facility" in rule 9.

Moreover, rule 9 is worded in the alternative, and being absent from a facility is only one of them. An additional basis for finding escape is an inmate's actions creating a reasonable belief that the inmate has taken flight. A reasonable reading of the disciplinary committee's ruling leads to the conclusion that Ronnfeldt was found guilty under both alternatives. According to the commission's finding, Ronnfeldt "cannot account for his time for nearly eight hours" (the absence-from-a-facility alternative). In addition, he was found guilty under the second alternative because the committee regarded him to be "on escape the minute he left the bus in Burlington."

We also reject Ronnfeldt's argument that his actions did not meet the common-law definition of escape or the "reasonably understood" meaning of the word. The obvious answer to this argument is that he was not charged with escape under the common law or a reasonable understanding of escape. He was charged with escape under a rule that provides its own definition—a definition that we believe was met here.

■ C. *Was Ronnfeldt reasonably notified of the consequences of his actions?* Ronnfeldt argues that he was not put on notice that leaving the bus would amount to an escape. This contention is belied by the work-release agreement signed by Ronnfeldt, which provided in part that

"any resident released from actual confinement on a Temporary Work Release agreement who willfully fails to follow instructions and report at the time specified in the Temporary Agreement may be guilty of escape. . . ."

We conclude that there was adequate evidence of Ronnfeldt's violation of rule 9 and therefore annul the writ.

**WRIT ANNULLED.**